IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JANE DOE, individually | ) | Case No. 1:24-cv-1256 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | JURY TRIAL DEMAND |
| V. | ) | |
| | ) | |
| KEVIN M. KELLY, ALLISON L. KELLY, and RYAN KELLY, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Comes now Plaintiff, Jane Doe, individually, by counsel, and hereby complains against Defendants Kevin M. Kelly, Allison L. Kelly, and Ryan Kelly, and in support of said Complaint for Damages, allege and state the following:

**PARTIES**

1. At all times relevant herein, Plaintiff Jane Doe was a resident of Avon, Hendricks County, State of Indiana.

2. At all times relevant herein, Plaintiff Jane Doe was seven (7) years old and is now twenty-one (21) years old and resides in Danville, Hendricks County, State of Indiana.

3. Given the sensitive nature of Jane Doe's claims against Defendants, a confidential disclosure of Jane Doe's identity will be made to counsel for Defendants.

4. At all times relevant herein, Defendants Kevin M. Kelly, Allison L. Kelly, and their son Ryan Kelly, were residents of Avon, Hendricks County, State of Indiana.

5. Kevin M. Kelly and Allison L. Kelly are the parents of Ryan Kelly. Mr. Kelly and Ms. Kelly currently reside in Corydon, Harrison County, Indiana.

6. At all times relevant hereto, Ryan Kelly was approximately fifteen (15) years old and resided with his parents. Ryan Kelly is now an adult and resides in Concord, Cabarrus County, State of North Carolina.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendant Ryan Kelly are citizens of different states, and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

## FACTS

9. In 2010, Jane Doe and her parents lived near Defendants Kevin M. Kelly ("Mr. Kelly"), Allison L. Kelly ("Ms. Kelly"), and the Kellys' three (3) children.

10. During this time, Jane Doe became good friends with the Kellys' daughter. Both girls were approximately seven (7) years old and enjoyed seeing each other almost daily, playing together in the Kellys' home and at Jane Doe's home.

11. During this time, Ryan Kelly ("Ryan") was fifteen (15) years old and resided with his parents, his younger brother, and his sister, who was the youngest of the Kelly children.

12. During this same time, Jane Doe's parents were good friends with Mr. and Ms. Kelly, often going on outings together, while Jane Doe and the Kellys' daughter were left in Ryan Kelly's care.

13. In approximately November of 2010, Jane Doe disclosed to her parents while out to dinner at Texas Roadhouse, that she had been sexually abused by Ryan Kelly on two separate occasions.

14. Jane Doe told her parents that both incidents occurred while Ryan Kelly's parents were not at home and had left Ryan in charge of his younger siblings and Jane Doe in the Kellys' home.

15. On the first occasion, Ryan asked Jane Doe to come into his bedroom "to talk," then he locked the door behind her. Ryan then sexually abused Jane Doe before allowing her to dress and leave the room.

16. The second incident happened when Ryan's parents were not at home and again left Ryan in charge of his younger siblings and Jane Doe in the Kellys' home.

17. On this occasion, Ryan again told Jane Doe to come with him "to talk." Ryan told Jane Doe that what he did to her before was part of a school project and that he would fail unless she allowed him to do it again.

18. Jane Doe did not want to be responsible for Ryan failing a grade. She felt confused and afraid.

19. Again, Ryan sexually abused Jane Doe before allowing her to dress and leave the room.

20. Upon hearing about their daughter's sexual abuse, Jane Doe's parents immediately left the restaurant, drove to the home of Mr. and Ms. Kelly, and told them that Ryan Kelly had sexually abused Jane Doe.

21. Later the same evening, Mr. and Ms. Kelly told Jane Doe's parents that Ryan admitted to sexually assaulting Jane Doe.

22. Mr. and Ms. Kelly also told Jane Doe's parents that Ryan admitted to having previously sexually abused his younger sister.

23. The next day, Jane Doe's mother contacted a sexual assault hotline, and Jane Doe underwent a forensic interview with a trauma informed therapist at Susie's Place Child Advocacy Center in Avon, Indiana.

24. The therapist at Susie's Place Child Advocacy Center reported Defendant Ryan Kelly to law enforcement authorities.

25. Upon information and belief, Ryan Kelly was arrested and found delinquent for committing an act that would be a crime if committed by an adult.

26. Jane Doe was incapable of providing consent to, or authorization for, any sexual acts with Defendant Ryan Kelly.

27. Jane Doe has suffered and will in the future continue to suffer mental anguish, loss of enjoyment of life, medical expenses, counseling expenses, and other past, present, and future damages.

## COUNT I – INTENTIONAL TORT LIABILITY
### Against Defendant Ryan Kelly

28. Plaintiff reincorporates each of the foregoing paragraphs as if fully set forth herein.

29. In sexually abusing Jane Doe, Defendant Ryan Kelly committed a civil assault upon her. He acted with intent to cause harmful contact, and such contact with Jane Doe did in fact take place.

30. If Ryan Kelly had been over the age of eighteen (18) in 2010, he could have been charged with the crime of Child Molesting, pursuant to Ind. Code § 35-42-4-3(b), for touching Jane Doe, a child under fourteen (14) years of age, with the intent to arouse and satisfy his sexual desires.

31. Defendant Ryan Kelly's actions were intentional, and his behavior caused Jane Doe to suffer severe emotional distress and psychological damage.

32. Defendant Ryan Kelly's actions were extreme and outrageous, and he intentionally or recklessly caused severe emotional distress to Jane Doe.

33. As a direct and proximate result of Defendant Ryan Kelly's intentional acts, Jane Doe has suffered and will in the future continue to suffer mental anguish, loss of enjoyment of life, medical expenses, counseling expenses, and other past, present, and future damages.

### COUNT II – NEGLIGENT SUPERVISION AND FAILURE TO WARN
### Against Defendants Kevin M. Kelly and Allison L. Kelly

34. Plaintiff reincorporates each of the foregoing paragraphs as if fully set forth herein.

35. Defendant Ryan Kelly's sexual abuse of Jane Doe occurred in Kevin M. Kelly and Allison L. Kelly's residence in Avon, Hendricks County, Indiana.

36. Jane Doe was an invitee of Kevin M. Kelly and Allison L. Kelly.

37. Kevin M. Kelly and Allison L. Kelly had the ability to influence Ryan's behavior from birth to age fifteen (15) and the ability to observe and modify his actions.

38. Kevin M. Kelly and Allison L. Kelly were in a better position than any other person(s) to discover and act upon Ryan's propensities and behavior.

39. Kevin M. Kelly and Allison L. Kelly had a duty to exercise reasonable care to control Ryan Kelly, their minor child, to prevent him from intentionally harming younger children, like Jane Doe, or from conducting himself in such a way as to create an unreasonable risk of harm to such younger children.

40. Prior to sexually abusing Jane Doe, Ryan Kelly had sexually abused his sister, the youngest child of Kevin M. Kelly and Allison L. Kelly, who was approximately the same age as Jane Doe.

41. Kevin M. Kelly and Allison L. Kelly knew or should have known that Ryan Kelly had sexually abused his younger sister before he sexually abused Jane Doe.

42. Kevin M. Kelly and Allison L. Kelly knew or should have known that Ryan Kelly had the propensity to sexually abuse girls who were much younger than himself, as he had done so with their daughter.

43. It was reasonably foreseeable that Ryan Kelly would repeat his behavior and sexually abuse Jane Doe, a girl who was much younger than himself and approximately the same age as his sister.

44. Kevin M. Kelly and Allison L. Kelly had the ability, and knew or had reason to know that they had the ability, to control Ryan Kelly's unsupervised access to vulnerable young girls in the Kellys' own home.

45. Kevin M. Kelly and Allison L. Kelly knew that they were leaving Ryan Kelly in charge of Jane Doe, a vulnerable young girl.

46. Kevin M. Kelly and Allison L. Kelly knew that Jane Doe was required to obey the directions of Ryan Kelly in the absence of adults and that Jane Doe would understand that she was to obey Ryan's directions.

47. Kevin M. Kelly and Allison L. Kelly failed to exercise reasonable control over Ryan Kelly's access to Jane Doe without parental supervision although they knew or with due care should have known that injury to Jane Doe was possible when they left Ryan Kelly in charge of her without adult supervision.

48. Kevin M. Kelly and Allison L. Kelly had the ability and the duty to warn Jane Doe and her parents that Ryan Kelly had previously sexually abused a young girl.

49. If Kevin M. Kelly and Allison L. Kelly had warned Jane Doe and her parents that Ryan Kelly had previously sexually abused a young girl, Jane Doe's parents would not have allowed their daughter to be left in the Kellys' home with Ryan Kelly.

50. As a direct and proximate result of Defendants Kevin M. Kelly and Allison L. Kelly's negligent failure to warn Jane Doe and her parents that Ryan Kelly had previously sexually abused a young girl, Jane Doe's parents allowed their daughter to be left in the Kellys' home with Ryan Kelly.

51. As a direct and proximate result of Defendants Kevin M. Kelly and Allison L. Kelly's negligent failure to warn Jane Doe and her parents that Ryan Kelly had previously sexually abused a young girl, Ryan Kelly was given the opportunity to sexually abuse Jane Doe and did so on two (2) occasions.

52. As a direct and proximate result of Defendants Kevin M. Kelly and Allison L. Kelly's negligent supervision of their minor son Ryan Kelly and their failure to warn Jane Doe and her parents that Ryan Kelly had previously sexually abused a young girl, Jane Doe has suffered and will in the future continue to suffer mental anguish, loss of enjoyment of life, medical expenses, counseling expenses, and other past, present, and future damages.

### COUNT III – STRICT LIABILITY
### Pursuant to Ind. Code § 34-31-4-1
### Against Defendants Kevin M. Kelly and Allison L. Kelly

53. Plaintiff reincorporates each of the foregoing paragraphs as if fully set forth herein.

54. Plaintiff pleads Strict Liability under Ind. Code § 34-31-4-1 in the alternative to Negligent Supervision.

55. Kevin M. Kelly and Allison L. Kelly had custody of their son Ryan Kelly throughout the time period in which Ryan sexually abused Jane Doe.

56. Ryan Kelly lived with his parents Kevin M. Kelly and Allison L. Kelly throughout the time period in which Ryan Kelly sexually abused Jane Doe.

57. Ryan Kelly knowingly, intentionally, and/or recklessly caused harm to Jane Doe.

58. As a result of the sexual abuse, Jane Doe has suffered and will in the future continue to suffer mental anguish, loss of enjoyment of life, medical expenses, counseling expenses, and other past, present, and future damages.

WHEREFORE, Plaintiff, Jane Doe, pray for the Court to enter judgment against Defendants Kevin M. Kelly, Allison L. Kelly, and Ryan Kelly, for the damages suffered by Jane Doe in an amount to be proven at trial including compensatory damages, general and special damages, punitive damages, for the costs of this action, and for all other relief just and proper in the premises.

## DEMAND FOR JURY TRIAL

Comes now the Plaintiff, Jane Doe, by counsel, and demands that the above Complaint and all issues therein be tried by jury.

Respectfully submitted,

**COHEN & MALAD, LLP**

*/s/ Gregory L. Laker*
Gregory L. Laker, #10322-49
Laurel R. K. Gilchrist, #16768-53
One Indiana Square, Suite 1400
Indianapolis, IN 46204
317-636-6481 Phone.317-636-2593 Fax
glaker@cohenandmalad.com
lgilchrist@cohenandmalad.com